## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LOUISIANA CHILDREN'S MEDICAL CENTER**                **CIVIL ACTION**

**VERSUS**                                                        **No. 23-1305**
                                                            **c/w 23-1311**
                                                            **c/w 23-1890**
                                                            **REF: 23-1890**

**ATTORNEY GENERAL OF**                                **SECTION I**
**THE UNITED STATES ET AL.**

### ORDER & REASONS

Pending before the Court are three motions. First is a motion[1] for summary judgment filed by petitioner, the Federal Trade Commission (the "FTC"). Respondents, Louisiana Children's Medical Center, d/b/a LCMC Health ("LCMC") and HCA Healthcare, Inc. ("HCA") (collectively, the "Hospitals"), and intervenor, the State of Louisiana (the "State"), oppose this motion.[2] Second is a motion[3] for summary judgment filed by the Hospitals. The FTC opposes this motion.[4] Third is a motion[5] for judgment on the pleadings or alternatively summary judgment filed by the State. The FTC opposes this motion as well.[6]

---

[1] R. Doc. No. 71.

[2] R. Doc. No. 78; R. Doc. No. 79.

[3] R. Doc. No. 75.

[4] R. Doc. No. 77.

[5] R. Doc. No. 74. The State seeks the same outcome as the Hospitals in this case; accordingly, the Court addresses the State's arguments and the FTC's responses to those arguments only to the extent necessary to resolve the dispositive questions in this case.

[6] R. Doc. No. 76.

For the reasons that follow, the Court grants the Hospitals' motion for summary judgment, denies the FTC's motion for summary judgment, grants the State's motion for summary judgment, and dismisses as moot the State's motion for judgment on the pleadings.

## I.    BACKGROUND

This case concerns LCMC's acquisition of three hospitals from HCA pursuant to a Certificate of Public Advantage ("COPA") issued by Louisiana's Department of Justice. The parties do not dispute that the Hospitals did not comply with Section 7A of the Clayton Antitrust Act, enacted by the Hart-Scott-Rodino Antitrust Improvements Act ("HSR Act"), which requires parties to transactions that meet certain statutory thresholds to notify federal antitrust authorities of their intended transaction and observe a 30-day waiting period.[7] Rather, the parties disagree about whether the Supreme Court's "state action doctrine" exempts the acquisition from the federal antitrust laws, including Section 7A, given the issuance of the COPA. Whether Section 7A reaches private parties' conduct qualifying as "state action" pursuant to that doctrine is a question of first impression.

The basic facts of this case are not in dispute. LCMC is a non-profit corporation and health system based in New Orleans, Louisiana.[8] HCA is a for-profit corporation that operates 182 hospitals nationwide and previously operated three hospitals in Louisiana through a joint venture with Tulane University.[9] On October 10, 2022,

---

[7] *See* R. Doc. No. 71-2 (FTC's statement of uncontested material facts), ¶¶ 8–9.
[8] *Id.* ¶ 1; R. Doc. No. 75-2 (Hospitals' statement of uncontested material facts), ¶ 15.
[9] R. Doc. No. 71-2, ¶ 3–4; R. Doc. No. 75-2, ¶ 16.

2

LCMC and HCA applied[10] for a COPA pursuant to a Louisiana statute known as a "COPA statute." *See* La. Stat. Ann. § 40:2254.1 *et seq*. As the COPA application[11] explained, LCMC sought to acquire from HCA three hospitals in the greater New Orleans area: Tulane Medical Center, Tulane Lakeside, and Lakeview Regional Medical Center.[12]

Louisiana's COPA statute provides Louisiana's Department of Justice (the "LADOJ") with "direct supervision and control over the implementation of cooperative agreements, mergers, joint ventures, and consolidations among health care facilities for which certificates of public advantage are granted." La. Stat. Ann. § 40:2254.1. The statute states that "[i]t is the intent of the legislature that supervision and control over [such transactions] . . . have the effect of granting the parties to [such transactions] state action immunity for actions that might otherwise be considered to be in violation of state antitrust laws, federal antitrust laws, or both." *Id.* The Hospitals supplemented their application multiple times before the LADOJ deemed it complete on November 18, 2022.[13]

Once the application was complete, Louisiana's COPA statute required the LADOJ to provide notice to the public, request public comment, hold a public hearing, and decide the application within a maximum of 180 days. *Id.* §§ 40:2254.4(B–C).

---

[10] R. Doc. No. 74-2, ¶ 10 (State's statement of uncontested material facts); R. Doc. No. 75-2, ¶ 13.

[11] R. Doc. No. 75-4.

[12] R. Doc. No. 75-2, ¶ 17.

[13] R. Doc. No. 74-2, ¶ 16; R. Doc. No. 75-2, ¶ 21.

After "extensive[] review[],"[14] the LADOJ held a notice and comment period, received and reviewed numerous comments from the public, and held a public hearing on December 8, 2022.[15]

On December 28, 2022, the LADOJ approved the acquisition and granted a COPA.[16] The COPA's "Terms and Conditions" provide for ongoing supervision.[17] The COPA states that the LADOJ may "revoke the COPA" if it is "not satisfied with any submitted corrective action plan," if LCMC "fails to comply with the [COPA's] terms and conditions," "fails to comply with any Corrective Action Plan, or if the [LADOJ] otherwise determines that the transaction is not resulting in lower health care costs or greater access to or quality of health care[.]"[18] Following this authorization, the Hospitals closed the transaction on January 1, 2023, and publicly announced it on January 3, 2023.[19]

As stated, pursuant to Section 7A of the Clayton Antitrust Act, parties to transactions over certain thresholds must file a pre-merger notification and report form (an "HSR Filing") and wait 30 days before consummating their transaction. 15 U.S.C. §§ 18a(a), 18(b)(1), 18(d)(1). In 2022 and early 2023, firms engaging in mergers or acquisitions had to file premerger notification reports of transactions between $101 million and $403.9 million, provided that the entities involved in the transactions met

---

[14] R. Doc. No. 74-2, ¶ 17.
[15] *Id.* ¶ 19; R. Doc. No. 75-2, ¶ 24–26.
[16] R. Doc. No. 74-2, ¶ 20; R. Doc. No. 75-2, ¶ 29.
[17] R. Doc. No. 74-2, ¶¶ 21–25; R. Doc. No. 75-2, ¶¶ 30–34.
[18] R. Doc. No. 75-17, at 3.
[19] R. Doc. No. 71-2, ¶¶ 5–6; R. Doc. No. 74-2, ¶ 26; R. Doc. No. 75-2, ¶ 35.

the "size of person" test.[20] In January 2023, these thresholds were $20.2 million for the smaller entity and $202 million for the larger entity based on total assets or net sales.[21] Parties who consummate mergers without observing the waiting period are currently subject to daily penalties exceeding $50,000.[22]

On April 19, 2023, LCMC and HCA filed[23] two separate lawsuits in the Eastern District of Louisiana based on Louisiana's COPA statute. Each action sought a declaratory judgment that their transaction was not subject to Section 7A's requirements and therefore not subject to penalties for consummating the acquisition without complying with Section 7A. The State of Louisiana, by and through its Attorney General, moved to intervene in both cases, and this Court granted those motions on May 1, 2023.[24] On May 9, 2023, this Court consolidated the Hospitals' two lawsuits.[25]

On April 20, 2023, the FTC filed a lawsuit in the District Court for the District of Columbia seeking an order enjoining the hospitals from further consummating the acquisition "until an appropriate time after LCMC has substantially complied with the premerger notification requirements set forth in Section 7A of the Clayton Act."[26] The FTC sought this relief pursuant to Section 7A(g)(2) of the Clayton Act and Section

---

[20] R. Doc. No. 71-2, ¶ 7.
[21] *Id.*
[22] R. Doc. No. 75-2, ¶ 44.
[23] *Louisiana Children's Medical Center v. Attorney General of the United States et al.*, E.D. La. Case No. 23-1305; *HCA Healthcare Inc. v. Attorney General of the United States et al.*, E.D. La. Case No. 23-1311.
[24] R. Doc. No. 17; E.D. La. Case No. 23-1311, R. Doc. No. 21.
[25] R. Doc. No. 28.
[26] R. Doc. No. 59, at 1.

13(b) of the Federal Trade Commission Act.[27] The Hospitals informed the D.C. District Court that they opposed the FTC's motion for injunctive relief and planned to move to transfer the case to the Eastern District of Louisiana.[28]

On April 21, 2023, in light of a stipulation between the parties, the D.C. District Court ordered LCMC to take certain steps to preserve the status quo, including: (1) not closing or otherwise undermining the viability, competitiveness, and marketability of the three Tulane hospitals; (2) maintaining all clinical service lines available; (3) not selling or transferring or taking any action to encumber or otherwise impair the assets used by the Tulane hospitals and preventing the destruction, wasting, or deterioration of the Tulane hospitals and not taking any action that might create a material change in the operations of the Tulane hospitals; (4) using best efforts to keep the Tulane hospitals staffed with sufficient employees to maintain the viability and competitiveness of the Tulane hospitals; and (5) not renegotiating, terminating, or causing termination of any contract between any health insurance carrier and the Tulane hospitals.[29] The Order provided that it would "expire and cease to bind any party upon the earlier of (1) an order granting the forthcoming motion to transfer this action to the United States District Court for the Eastern District of Louisiana; or (2) an order on plaintiff's request for a preliminary injunction[.]"[30]

---

[27] *Id.*
[28] D.D.C. Case No. 23-1103, R. Doc. No. 31, at 6.
[29] D.D.C. Case No. 23-1103, R. Doc. No. 12, at 1–2.
[30] *Id.* at 3.

On May 23, 2023, the D.C. District Court granted the Hospitals' motion and transferred this case to the Eastern District of Louisiana.[31] In so doing, Judge Amy Berman Jackson reasoned that "[g]iven the posture of the case, the state action question must be resolved first."[32] Judge Jackson's explained that "[t]he determination of the effect of the COPA on subsequent federal action will involve the interpretation and application of [Louisiana] state law[,]" so this Court's "familiarity with that law point[ed] toward transfer."[33] The Hospitals subsequently moved to consolidate the District of Columbia case with the Eastern District of Louisiana case,[34] and this Court granted that motion without opposition on June 22, 2023.[35]

On June 20, 2023, the FTC moved to dismiss the Hospitals' lawsuits seeking a declaratory judgment for lack of subject matter jurisdiction, or, in the alternative, to hold in abeyance all proceedings.[36] Pursuant to the discussion at a status conference on July 6, 2023, this Court stayed and administratively closed the cases seeking a declaratory judgment, granted the State's motion to intervene in the FTC's lawsuit, and set a briefing schedule for any motions for summary judgment and/or judgment on the pleadings in the FTC's lawsuit.[37] The parties subsequently filed the above-mentioned motions.

---

[31] E.D. La Case No. 23-1890, R. Doc. No. 31 (order transferring case).
[32] *Id.* at 22.
[33] *Id.* at 22–23.
[34] E.D. La. Case No. 23-1890, R. Doc. No. 43.
[35] R. Doc. No. 58.
[36] R. Doc. No. 55.
[37] R. Doc. No. 67.

## II.      STANDARD OF LAW[38]

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory

---

[38] Because the Court decides the case based on the motions for summary judgment, it need not consider the State's motion for judgment on the pleadings—which it dismisses as moot—and therefore does not lay out the legal standard for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

## III.   ANALYSIS

The parties disagree about the starting point for the Court's analysis. According to the Hospitals, the Court should begin its analysis by determining whether the Hospitals' transaction is exempt from Section 7A's requirements pursuant to the state action doctrine.[39] The FTC responds that this "puts the cart

---

[39] R. Doc. No. 75-1, at 7.

before the horse."[40] In the FTC's view, the state action question "is not relevant to the question of whether the Hospitals were obligated to file under the HSR Act."[41] Instead, the FTC contends that the Court should begin its analysis by interpreting the text of Section 7A.[42]

As mentioned, this case was transferred to this Court from the D.C. District Court in part because Judge Amy Berman Jackson found that "the state action question[,]" which requires analysis of Louisiana law, "must be resolved first."[43] As Judge Jackson pointed out, if the Court determines that the COPA does not exempt the Hospitals from Section 7A, the FTC would be entitled to equitable relief given the violation of the statute.[44] But if the Court determines that the COPA does exempt the transaction from the federal antitrust laws, including Section 7A, then HSR review "would arguably be an empty exercise[.]"[45] Indeed, if the transaction is exempt from Section 7, then subjecting it to Section 7A's requirements at this stage simply to allow the FTC to determine whether it is in fact exempt would be pointless. *See Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 171 F.3d 231, 234 (5th Cir. 1999) (citation omitted) (noting that state action questions "can often be resolved at an early stage of the litigation"). And if the transaction is exempt from Section 7A itself, then the Hospitals could not have violated Section 7A.

---

[40] R. Doc. No. 77, at 17.
[41] *Id.*
[42] *See generally* R. Doc. No. 71.
[43] E.D. La. Case No. 23-1890, R. Doc. No. 31, at 22 (order transferring case).
[44] *Id.*
[45] *Id.*

Given the posture of this case, which was filed months after the Hospitals completed their transaction and in which the FTC seeks equitable relief based on the Hospitals' failure to comply with Section 7A, the Court agrees with the Hospitals and the D.C. District Court that it must first determine whether the COPA issued pursuant to Louisiana's COPA statute exempts the transaction from federal antitrust enforcement. Because the Court finds that it does, the Court must also determine whether—as parties to a transaction exempt from the federal antitrust laws pursuant to the state action doctrine—the Hospitals were bound by the requirements of Section 7A. They were not.

### a. The State Action Doctrine

Pursuant to the state action doctrine, the Supreme Court has consistently presumed that Congress does "not intend to compromise the States' ability to regulate their domestic commerce" absent a clear statement to the contrary. *S. Motor Carriers Rate Conf., Inc. v. United States*, 471 U.S. 48, 56 (1985). The doctrine, which is grounded in "principles of federalism and state sovereignty," provides that federal antitrust laws do "not apply to anticompetitive restraints imposed by the States as an act of government." *City of Columbia v. Omni Outdoor Advert.*, 499 U.S. 365, 370 (1991) (quotations omitted). It recognizes that "federal antitrust laws are subject to supersession by state regulatory programs." *F.T.C. v. Ticor Title Ins. Co.*, 504 U.S. 621, 632 (1992).[46]

---

[46] The FTC argues that the state action doctrine "is disfavored." R. Doc. No. 71-1, at 7 (citing *FTC. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 225 (2013) (quoting *Ticor*, 504 U.S. at 636)). In *Ticor*, however, the Supreme Court noted that "state-

The state action doctrine stems from *Parker v. Brown*, a Supreme Court decision that interpreted Sections 1 and 2 of the Sherman Antitrust Act of 1890. 317 U.S. 341 (1943). Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony . . ." 15 U.S.C. § 1. Section 2 provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilt of a felony . . ." *Id.* § 2.

Confronted with the question of whether a California program designed to restrict competition among raisin growers violated the Sherman Act, the Supreme Court held that "nothing in the language of the Sherman Act or in its history . . . suggest[ed] that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Parker*, 317 U.S. at 350–51. Although the Sherman Act by its terms applied to "[e]very person," the Supreme Court found that the State of California did not qualify as a "person" absent a clear statement of

---

action immunity is disfavored" to avoid instances where that doctrine "will impede [states'] freedom of action, not advance it." 504 U.S. at 635–36. That rationale does not apply to this case, where the state statute in question expresses "the intent of the legislature . . . that this regulation have the effect of granting [certain parties] state action immunity for actions that might otherwise be considered in violation of state antitrust laws, federal antitrust laws, or both[,]" as discussed more fully in the next section. La. Stat. Ann. § 40:2254.1.

Congress's intent to reach states. *See id.* California was therefore exempt from the Act. *Id.*

As the Supreme Court has explained, "immunity from the federal antitrust laws may extend to nonstate actors carrying out the State's regulatory program." *Phoebe Putney*, 568 U.S. at 224–25. The state action doctrine applies to the anticompetitive acts of private parties only where "the challenged restraint" is "clearly articulated and affirmatively expressed as state policy" and where that policy is "actively supervised by the State." *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980) (internal quotation marks omitted).

States and those carrying out a state's regulatory program are also considered exempt from Section 7 of the Clayton Act, which provides that "[n]o person . . . shall acquire . . . stock or other share capital" where "the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18; *see, e.g.*, *Phoebe Putney*, 568 U.S. at 222, 227–29 (determining that state-action immunity did not exempt the defendant from liability under the antitrust laws, including Section 7, because the state's authorization of certain acquisitions did not meet *Midcal*'s clear-articulation test); *Commonwealth v. Susquehanna Area Reg'l Airport Auth.*, 423 F. Supp. 2d 472, 472 (M.D. Pa. 2006) (granting the defendant's motion to dismiss a complaint alleging antitrust violations under Section 7 of the Clayton Act and Section 2 of the Sherman Act "[b]ased upon clear application of *Parker* immunity"); *Hunnicutt v. Tafoya-Lucero*, No. 21-867, 2022 WL 832566, at *4 (D.N.M. Mar. 21, 2022) (explaining that "[t]he state action exemption articulated in

*Parker* has been expanded to apply to all of the federal antitrust laws, including the Clayton Act").

In the FTC's view, the Hospitals "overread" the Supreme Court's decisions regarding the state action doctrine.[47] The FTC conceives of the state action doctrine as a *defense* which does not confer "immunity" on private actors.[48] For support, the FTC points to *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287 (5th Cir. 2000). That case is not entirely on point. There, the Fifth Circuit rejected a private party's argument that he was immune *from the lawsuit itself* pursuant to the state action doctrine. *Acoustic Sys.*, 207 F.3d at 291–92 (noting that the private party sought "immunity *from antitrust suit*" as well as immunity from liability (emphasis added)). The Hospitals have not asserted that they are immune from an antitrust *lawsuit* or that they can assert immunity akin to Eleventh Amendment immunity. They have merely argued that, since their transaction is "exempt" from the federal antitrust laws pursuant to the state action doctrine, they were not required to comply with Section 7A.

Ultimately, the Court finds that the state action doctrine is neither an immunity from litigation, nor an ordinary defense. Rather, as the State argues,[49] the doctrine reflects "a recognition of the limited reach of the Sherman Act" and other federal antitrust laws. *E.g.*, *Acoustic Sys.*, 207 F.3d at 292 n.3 (citation omitted); *La. Real Est. Appraisers Bd. v. FTC*, 976 F.3d 597, 602 n.5 (5th Cir. 2020) (citation

---

[47] R. Doc. No. 88, at 7.
[48] R. Doc. No. 71-1, at 15–19.
[49] R. Doc. No. 74-1, at 21.

omitted). Where it applies, that doctrine places certain parties outside the reach of the federal antitrust laws; in other words, it exempts them from those laws.

### b.  The Acquisition Pursuant to Louisiana's COPA Statute Is "Exempt" from "the Federal Antitrust Laws"

Despite the D.C. District Court's framing of the issue, the FTC chose not to brief the question of whether the Hospitals' transaction pursuant to Louisiana's COPA statute is in fact exempt from the federal antitrust laws. Rather, based on its view that Section 7A is not among "the federal antitrust laws" from which private parties acting pursuant to the state action doctrine are exempt, the FTC argues that this question is "premature."[50] According to the FTC, the state action question is "fact-intensive" and cannot be decided on the "redacted" record before the Court without the type of unredacted materials typically included in HSR Filings.[51]

However, as the Fifth Circuit has previously found, state action questions "can often be resolved at an early stage of the litigation" because "[s]tate authorization is generally interpreted by an objective test that looks at the language of the statute[.]" *Surgical Care Ctr. of Hammond*, 171 F.3d at 234 (citation omitted).  And while the question of active supervision will inherently require a court to look at facts, the FTC has not adequately explained why it believes the Court cannot evaluate active supervision on the record before it. As discussed below, the record provides ample evidence of active supervision. Moreover, the relief the FTC seeks would be futile if the transaction were exempt from federal antitrust laws in the first place. It therefore

---

[50] R. Doc. No. 77, at 19.
[51] *Id.* at 19–22.

makes sense to determine at the outset whether the Hospitals were exempt from the statute pursuant to the state action doctrine.

The D.C. District Court advised the parties that the state action question "must be resolved first."[52] The FTC chose not to listen. The FTC cannot now rely on its own litigation strategy—specifically, its choice not to brief this issue fully or pursue discovery—to prevent the Court from reaching the state action question.

<em>i.     Louisiana's COPA Statute Satisfies</em> MidCal<em>'s Test</em>

For the state action doctrine to apply to private parties' transactions, the challenged restraint must be (1) "clearly articulated and affirmatively expressed as state policy[,]" and (2) "actively supervised" by the state. *Midcal*, 445 U.S. at 105.

A.  <u>Clearly Articulated State Policy</u>

To satisfy the clear articulation requirement, the State must have "clearly articulated and affirmatively expressed" the anticompetitive conduct "as state policy." *Phoebe Putney*, 568 U.S. at 225. The State also "must have foreseen and implicitly endorsed the anticompetitive effects." *N.C. State Bd. Of Dental Exam'rs v. FTC*, 574 U.S. 494, 507 (2015).

Louisiana's COPA statute easily satisfies this requirement. The statute states: "[i]t is the intent of the legislature that supervision and control over the implementation of these agreements, mergers, joint ventures, and consolidations substitute state regulation of facilities for competition between facilities and that this regulation have the effect of granting the parties to the agreements, mergers, joint

---

[52] E.D. La Case No. 23-1890, R. Doc. No. 31, at 22 (order transferring case).

ventures, or consolidations state action immunity for actions that might otherwise be considered to be in violation of state antitrust laws, federal antitrust laws, or both." La. Stat. Ann. § 40:2254.1. This language plainly indicates the state's policy in favor of COPA-approved mergers regardless of their anticompetitive effects. *See, e.g.,* *Jackson, Tenn. Hosp. Co., LLC v. W. Tenn. Healthcare, Inc.*, 414 F.3d 608, 612 (6th Cir. 2005) (finding that clear articulation was satisfied where the statute in question provided that hospital authorities could exercise certain powers "*regardless of the competitive consequences thereof*") (emphasis in original); *DFW Metro Line Servs. v. Sw. Bell Tel. Corp.*, 988 F.2d 601, 605 (5th Cir. 1993) (affirming previous holding that a Texas statute specifying that "regulation shall operate as a substitute for . . . competition" satisfied the clear articulation prong).

## B. <u>Active State Supervision</u>

In order to evaluate active supervision, the Court must first identify the "particular anticompetitive acts" requiring supervision. *Dental Exam'rs*, 574 U.S. at 507, 515. As the Hospitals note,[53] the challenged conduct in this case is the closing of LCMC's acquisition of three hospitals from HCA on January 1, 2023. Specifically, the FTC argues that the Hospitals violated Section 7A by failing to notify the FTC and abide by the statute's waiting period before closing the transaction.[54]

To satisfy *Midcal*'s active supervision requirement, the state must exercise ultimate control over the challenged anticompetitive conduct. *Patrick v. Burget*, 486

---

[53] R. Doc. No. 75-1, at 11.
[54] R. Doc. No. 71, at 1.

U.S. 94, 101 (1988). "The mere presence of some state involvement or monitoring does not suffice." *Id.* "The active supervision prong of the *Midcal* test requires that state officials have and exercise power to review particular anticompetitive acts of private parties and disapprove those that fail to accord with state policy." *Id.*

Louisiana's COPA statute makes clear that its purpose is to "provide the state, through the department, with direct supervision and control over the implementation of cooperative agreements, mergers, joint ventures, and consolidations among health care facilities for which certificates of public advantage are granted." La. Stat. Ann. § 40:2254.1. Pursuant to this statute, the LADOJ had the "power to veto or modify" the acquisition, as required for the state action doctrine to apply. *Dental Exam'rs*, 574 U.S. at 515. In fact, "[t]he [LADOJ] may not issue a certificate unless the [LADOJ] finds that the agreement is likely to result in lower health care costs or is likely to result in improved access to health care or higher quality health care without any undue increase in health care costs." La. Stat. Ann. § 40:2254.4(B).

The LADOJ also "review[ed] the substance" of the acquisition, as required for application of the state action doctrine. *Dental Exam'rs*, 574 U.S. at 515. The Hospitals' application extensively detailed the substance of the acquisition and its likely effects on health care and competition.[55] According to the affidavit of the

---

[55] R. Doc. No. 75-2, ¶ 18. In its response to the Hospitals' Statement of Undisputed Material Facts, the FTC stated that Paragraph 18 was "undisputed as to the general claims in the Hospitals' COPA application (to the extent they are not redacted)." R. Doc. No. 77-1, ¶ 18. As discussed more fully on the following page, the Court is not persuaded that the redactions can serve as a basis for denying the Hospitals' motion for summary judgment.

Director of the Civil Division for the Louisiana Department of Justice, the LADOJ considered the application and, "after extensive analysis by LADOJ attorneys and staff regarding the transaction, the facilities, and the likely effects on health care and competition in the state, which also included input from expert consultants who reviewed the COPA application, the LADOJ determined that the application materials satisfied the statutory requirements and that a COPA should be issued."[56]

Again, the FTC argues that the Court should not perform this analysis at all because the active supervision test in particular is "fact-specific" and the determination cannot be made until the Hospitals make an HSR Filing.[57] However, as discussed, if the Hospitals are exempt from the antitrust laws as they argue, there is no reason for them to make an HSR Filing at all. Accordingly, the Court must make this determination on the record before it.

The FTC makes much of the fact that the COPA application in the record is redacted, but—as the Hospitals note—the FTC has not sought to obtain an unredacted copy of the COPA application, nor has it explained how the redacted information, which the Hospitals characterize as "largely concern[ing] the Hospitals' finances and details of planned investments[,]" would bear on the analysis of active supervision.[58] Further, the FTC states that "[t]he granting of a COPA does not, in itself, show active supervision[,]"[59] but does not engage with the Hospitals' other

---

[56] R. Doc. No. 75-14, ¶ 28; R. Doc. No. 75-2, ¶¶ 28–29.
[57] R. Doc. No. 77, at 19–22.
[58] R. Doc. No. 89, at 3.
[59] R. Doc. No. 77, at 20.

evidence, including the declaration of Angelique Freel, Director of the Civil Division for the LADOJ, detailing the State's supervision of the transaction to date and the "terms and conditions empower[ing] the LADOJ to 'actively supervise' both the transaction itself and the new health system on an ongoing basis."[60] This is not enough to raise a genuine dispute of material fact pursuant to Rule 56.

### c. The Parties to This Transaction Exempt from the Federal Antitrust Laws Need Not Comply with Section 7A

#### i. *The Text of the Statute*

As stated, Section 7A, enacted as part of the HSR Act, provides that, "[e]xcept as exempted pursuant to subsection (c), no person shall acquire, directly or indirectly, any voting securities or assets of any other person, unless both persons . . . file notification [with the FTC and the United States Department of Justice] . . . and [a 30-day] waiting period . . . has expired." 15 U.S.C. § 18a *et seq*. The question, therefore, is whether private parties to a transaction consummated pursuant to a COPA issued by the LADOJ in accordance with Louisiana's COPA statute qualify as "persons" within the meaning of this statute.

The FTC contends that the HSR Act is clear on this question, emphasizing that Section 7A enumerates certain transactions that are exempted from its requirements and states: "*Except as exempted pursuant to subsection (c)*, no person shall [acquire assets without complying with notification and waiting period requirements]."[61] Based on this, the FTC urges that any transactions not explicitly appearing on the

---

[60] R. Doc. No. 75-14, ¶¶ 12–14, 30–37.
[61] R. Doc. No. 71-1, at 8–15 (quoting 15 U.S.C. § 18a(a)) (emphasis added).

list of exemptions should not be exempted, and that the Court should not "invent an implied exemption by extending the state action doctrine to the procedural requirements of the HSR Act."[62]

The Hospitals disagree, correctly noting that the state action doctrine has been applied to Section 7, "which, like Section 7A, contains its own set of enumerated exceptions and does not specifically refer to the state action doctrine."[63] In its reply brief, the FTC takes issue with the Hospitals' reliance on *Phoebe Putney* for this proposition and contends that "nowhere did the Supreme Court in *Phoebe Putney* even mention a 'clear statement' rule or evaluate the term 'person.'"[64] That is technically correct since, in *Phoebe Putney*, the Supreme Court found the state action doctrine did not exempt the defendant from liability under the antitrust laws, including Section 7. 568 U.S. at 224. The Court ruled that way not because it found

---

[62] *Id.* at 12. With respect to the question of whether the Hospitals' transaction fits within the enumerated exemptions of Section 7A, the Court finds the FTC has the better argument. The Hospitals first strain to fit their transaction within the exemption listed in Section 7A(c)(5) as a "transaction[] specifically exempted from the antitrust laws by Federal statute[.]" R. Doc. No. 75-1, at 18. The FTC rightly counters that the state action defense is not a statutory exemption and that transactions "specifically exempted" by statute do not include transactions implicitly exempted by a judicial doctrine like the state action doctrine. Next, the Hospitals suggest their transaction is exempt pursuant to Section 7A(c)(4) on the theory that their transaction is a "transfer[] to or from a Federal agency or a State or political subdivision thereof." R. Doc. No. 75-1, at 18. This also misses the mark. As the FTC points out, the Hospitals are neither a state nor a political subdivision of a state and therefore do not qualify for this exemption. R. Doc. No. 71-1, at 9–11. Ultimately, however, as discussed throughout this section, the Court decides the legal question before it based on ambiguities in the term "person," not based on these enumerated exemptions.

[63] R. Doc. No. 78, at 15 (citing *Phoebe Putney*, 568 U.S. at 224–27).

[64] R. Doc. No. 88, at 3.

the word "person" reached private entities acting pursuant to a state program, but because the state's authorization of certain acquisitions did not meet *Midcal*'s clear-articulation test. *Id.* at 236.

However, the *Phoebe Putney* Court suggested—and other courts have since reaffirmed—that Section 7 does not apply to private entities acting pursuant to a state "restraint . . . clearly articulated and affirmatively expressed as state policy" with active supervision by the state. *See id.*; *Commonwealth v. Susquehanna Area Reg'l Airport Auth.*, 423 F. Supp. 2d 472, 472 (M.D. Pa. 2006). The FTC does not contest that "person" in the context of Section 7 does not reach private entities covered by the state action doctrine. Yet it inexplicably argues that the exemptions in Section 7A preclude such a reading of "person" without adequately explaining why the exemptions in Section 7 do not preclude that same reading of "person." Additionally, as the Hospitals note,[65] the FTC's inference that the textual exemptions preclude the state action doctrine is an implicit inference, which cannot serve as a clear statement of Congress's intent to upset the balance between federal power and states' power to regulate domestic commerce. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 288 (1994) (Scalia, J., concurring in judgment) (finding a negative inference—the argument that a statute's specification of prospective-only application for two sections implied that its other provisions were retroactive—was "no substitute for clear statement").

---

[65] *Id.*

The FTC also argues that "Congress empowered the FTC and DOJ to define the terms used in the HSR Act" and that, through regulations, those agencies defined the term "person" to mean "an ultimate parent entity and all entities which it controls directly or indirectly[.]"[66] The regulations also specify that "the term entity shall not include . . . the United States or any of the States thereof, or any political subdivision or agency of either (other than a corporation or unincorporated entity engaged in commerce)." 16 C.F.R. § 801.1(a)(2). Although the Hospitals in this case acted pursuant to state approval and supervision, the FTC is correct that both LCMC and HCA are corporations engaged in commerce and neither states nor political subdivisions of states.

However, as the Hospitals rightly observe, the FTC's regulations only define "person" to exclude states and include private parties.[67] Neither the statute nor the regulation addresses the question actually at issue in this case: whether a transaction is exempt from Section 7A if that transaction was consummated pursuant to a COPA statute that exempts private parties from the federal antitrust laws under the state action doctrine. Additionally, the Hospitals contend that the FTC's regulations cannot supply the requisite clear statement regarding the state action doctrine because Congress—not an agency—must be the one to speak clearly on major questions of federalism.[68]

---

[66] R. Doc. No. 77, at 7 (citing 15 U.S.C. § 18a(d)(2)(A) and 16 C.F.R. § 801(a)(1)).
[67] R. Doc. No. 78, at 11–12.
[68] R. Doc. No. 89, at 4–5 (citations omitted).

The Hospitals primarily argue that, with respect to the question of whether state action by a private party pursuant to *Midcal* is exempt from the federal antitrust laws, "Congress used the operative word 'person' the same way in Section 7A, Section 7, and the Sherman Act."[69] Interpreting the word "person" in the Sherman Act,[70] the Supreme Court in *Parker* determined that it did not encompass states. *Parker*, 317 U.S. at 350–51. As explained, the Supreme Court later clarified that the state action doctrine applies also to nonstate actors carrying out the state's regulatory program where "the challenged restraint" is "clearly articulated and affirmatively expressed as state policy" and where that policy is actively supervised by the state." *Midcal*, 445 U.S. at 105. States and those acting pursuant to state policy also do not qualify as "person[s]" within the meaning Section 7 of the Clayton Act.[71] *See, e.g.*, *Phoebe Putney*, 568 U.S. at 222, 227–29 (determining that the state action doctrine did not exempt the defendant from liability under the antitrust laws, including Section 7, because the state's authorization of certain acquisitions did not meet *Midcal*'s clear-articulation test); *Commonwealth v. Susquehanna Area Reg'l*

---

[69] R. Doc. No. 78, at 11.

[70] Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony . . ." 15 U.S.C. § 1. Section 2 provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilt of a felony . . ." *Id.* § 2.

[71] Section 7 of the Clayton Act provides that "[n]o person . . . shall acquire . . . stock or other share capital" where "the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18.

*Airport Auth.*, 423 F. Supp. 2d 472, 472 (M.D. Pa. 2006) (granting the defendant's motion to dismiss a complaint alleging antitrust violations under Section 7 of the Clayton Act and Section 2  of the Sherman Act "[b]ased upon clear application of *Parker* immunity").

In response, the FTC points out certain important differences between the Sherman Act and Section 7 of the Clayton Act, on the one hand, and Section 7A on the other.[72] For example, the Sherman Act, as analyzed in *Parker*, "makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by a state." *Parker*, 317 U.S. at 351. The Clayton Act defines "person" to "include corporations and associations" and says nothing about whether "person" encompasses states. *See* 15 U.S.C. § 12(a). By contrast, the HSR Act does mention states by exempting "transfers to or from a Federal agency or a State or political subdivision thereof." 15 U.S.C. 18a(c)(4). Ultimately, however, this reference to states does not speak to the question of whether parties acting pursuant to a state's regulatory program like Louisiana's COPA statute are exempt from Section 7A.

What this discussion demonstrates is that—contrary to the FTC's position— the HSR Act is not clear about whether the term "person" in Section 7A encompasses private parties who consummate their transaction pursuant to a state COPA statute exempting them from the federal antitrust laws. The Court finds that the statute is silent as to Section 7A's application to transactions exempt from the federal antitrust laws pursuant to *Midcal*.

---

[72] R. Doc. No. 77, at 8–9.

ii.     Clear Statement Rule

As discussed, the state action doctrine is motivated by "respect for ongoing regulation by the State." *Ticor*, 504 U.S. at 633. Concerns about federalism have prompted the Supreme Court to apply "the well-established principle that it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides the usual constitutional balance of federal and state powers." *Bond v. United States,* 572 U.S. 844, 858 (2014) (internal quotation marks omitted). Absent a clear statement of Congress's intent to displace a state's ability to regulate its own commerce, courts in the antitrust context presume that Congress did not so intend. *See Motor Carriers*, 471 U.S. at 56 (explaining that the *Parker* Court "refused to find in the Sherman Act 'an unexpressed purpose to nullify a state's control over its own officers and agents . . . .'" and explaining that *Parker* "was premised on the assumption that Congress, in enacting the Sherman Act, did not intend to compromise the States' ability to regulate their domestic commerce").

The FTC argues that the Court should not require such a clear statement in this case because the Hospitals and the State have not demonstrated that the statute is ambiguous and they have not demonstrated that there is a conflict between the HSR Act and Louisiana's COPA law.[73] As discussed in the previous section, the Court finds that Section 7A is ambiguous with respect to its application to private parties' transactions which are exempt from the federal antitrust laws pursuant to the state action doctrine and *Midcal*.

---

[73] R. Doc. No. 77, at 10.

Additionally, the Court finds that there is a conflict between the HSR Act and Louisiana's COPA law sufficient to implicate the federalism concerns motivating the clear statement rule. Louisiana's COPA statute expresses the state legislature's policy to "substitute state regulation . . . for competition" among health care facilities. La. Stat. Ann. § 40:2254.1. As the Hospitals point out, Louisiana's COPA statute and the FTC's premerger review pursuant to Section 7A operate on different and conflicting timelines.[74] By granting the COPA, the State authorized the Hospitals to close their transaction immediately, subject to the execution of certain documents, submission of annual reports, and full compliance with the COPA's terms and conditions.[75] Section 7A, if it applied, would have required the Hospitals to wait at least 30 days to close the transaction, and the FTC in its discretion could have extended that waiting period significantly by requesting further information and documentation. 15 U.S.C §§ 18a(b)(1), (e)(2). COPA approval may be contingent on terms and conditions that may only be possible through immediate integration[76] and, generally, timing is crucial in the context of such transactions. Further, as the State points out, the allegations of the FTC's petition indicate that the purpose of this lawsuit is to subject the Hospitals' transaction to the precise "antitrust scrutiny" that

---

[74] R. Doc. No. 89, at 6–7.
[75] R. Doc. No. 75-16, at 3–4.
[76] For example, as part of the COPA application in this transaction, LCMC committed to making $220 million in capital investments to modernize facilities, offer new medical services, and add new specialty care units. R. Doc. No. 75-2, ¶ 20.

the Attorney General intended to avoid by issuing the COPA.[77] The Court therefore concludes that applying Section 7A to mergers exempt from the antitrust laws through a COPA would "frustrate" the state's regulatory program. *See Motor Carriers*, 471 U.S. at 56–57.[78]

## IV.   CONCLUSION

Based on the analysis above, the Court holds that the Hospitals' transaction is exempt from the federal antitrust laws and need not comply with Section 7A's requirements. The Court finds no reason to subject a merger exempt from Section 7 to a waiting period and filing requirements designed to allow the FTC to determine whether that merger may violate Section 7. As discussed throughout, there is no genuine dispute of material fact in this case, and the Hospitals are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

---

[77] R. Doc. No. 74-1, at 19–20 (citing *Phoebe Putney*, 568 U.S. at 225–26; *Patrick*, 486 U.S. at 98, 105–06; *Fisher v. City of Berkeley*, 475 U.S. 260, 265 (1986); *Hallie v. City of Eau Claire*, 471 U.S. 34, 44 (1985)).

[78] The FTC cites several cases holding that defenses to liability, including the state action doctrine, cannot be used to quash a subpoena issued pursuant to the FTC Act. R. Doc. No. 71-1, at 17–19. According to the FTC, like the FTC Act's provisions regarding subpoena power, Section 7A "do[es] not impose antitrust liability, but merely facilitate[s] investigation." *Id.* at 19. However, Section 7A, which prevents parties from merging before notification and a waiting period, requires a filing fee, and imposes monetary penalties for any failure to comply, does more than "facilitate investigation." The FTC also argues that the state action doctrine does not apply to Section 7A because its requirements are "procedural." *Id.* at 16–18. But the FTC cites no cases distinguishing between "procedural" antitrust laws and "substantive" ones in the context of the state action doctrine. Regardless, as explained, based on the statute's ambiguity, the Court does not find a clear statement of Congress's intent to displace the State's power to regulate commerce in the language of Section 7A or the HSR Act. The statute's text simply does not address whether it applies to transactions consummated pursuant to the state action doctrine that satisfy *Midcal*'s two-part test. That is the dispositive question.

Although the Court appreciates that this holding may make enforcement more difficult for the FTC in the narrow context of transactions that close pursuant to state COPAs, parties to such transactions are already incentivized to ensure that their transactions satisfy *Midcal*'s demands. If they are wrong about *Midcal*'s application, those parties face equitable measures and steep daily fines. Accordingly,

**IT IS ORDERED** that the Hospitals' motion for summary judgment is **GRANTED** and the FTC's claims against the Hospitals are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the State's motion for summary judgment is **GRANTED**, and the State's motion for judgment on the pleadings is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that the FTC's motion for summary judgment is **DENIED**.

New Orleans, Louisiana, September 27, 2023.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**